[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11136
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-61752-BB

CYNTHIA SCHWARTZ,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 20, 2021)

Before WILSON, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Petitioner Cynthia Schwartz appeals the district court's denial of her 28 U.S.C. § 2254 habeas petition.  She argues that the state postconviction court, in evaluating whether her plea was knowingly and voluntarily entered in light of her counsel's alleged mistaken advice, improperly focused on the outcome of the direct appeal of her conviction rather than her decision-making process in entering the plea.  Because the state court's consideration of the outcome of her direct appeal was not an unreasonable application of United States Supreme Court precedent, we affirm the district court's denial of her habeas petition.

## I.    FACTUAL AND PROCEDURAL HISTORY

In February 2002, Schwartz was charged in Florida court with one count of trafficking in cocaine in an amount between four hundred grams and one hundred fifty kilograms and two counts of trafficking in oxycodone in an amount between fourteen and twenty-eight grams.  The case proceeded through extensive pretrial motions practice, which included the state trial court denying four motions relevant to this appeal: (1) a motion to suppress evidence; (2) a motion to dismiss based on objective entrapment; (3) a motion to dismiss based on presenting false testimony during the hearings on the above motions; and (4) a motion for a *Franks*[1] hearing.

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978) (requiring a hearing when a defendant claims that allegedly false statements are contained in an affidavit in support of the issuance of a search warrant).

In 2011, after nine years of litigation, Schwartz accepted a negotiated plea. She now contends that she only accepted the plea based on her attorney's advice that he believed she would be successful in appealing various pre-trial motions and would likely secure a dismissal of the charges on review. The plea deal outlined Schwartz's various rights in connection with the plea, including a right to appeal all dispositive pre-trial motions. Based on the parties' stipulation, the state trial court designated the above four pre-trial motions as "dispositive" for purposes of Schwartz's rights of appeal. In accordance with the plea agreement, the state court sentenced Schwartz to consecutive thirty-year terms of imprisonment on each count. The court then granted her a furlough, after which her sentence was mitigated to concurrent terms of imprisonment of fifteen years—the mandatory minimum on each count.

Schwartz filed a timely direct appeal of her convictions and sentence to the Florida Fourth District Court of Appeal, arguing that the state trial court erred in denying her various pretrial motions, including the four outlined above. The Fourth District Court of Appeal affirmed Schwartz's convictions and sentence and denied her subsequent motion for rehearing and rehearing en banc. *Schwartz v. State*, 125 So. 3d 946 (Fla. Dist. Ct. App. 2013). Of relevance here, the appellate court only analyzed the merits of Schwartz's motion to suppress and motion to dismiss based on objective entrapment, holding that the trial court did not err in denying either

3

motion. *Id.* at 950–52. The court found that the remaining pre-trial motions, including the motion to dismiss based on presenting false testimony during the pre-trial hearings and the motion for a *Franks* hearing, were not dispositive and therefore could not be appealed under the plea agreement. *Id.* at 952. As to the motion to dismiss based on false testimony, the court further noted that, even if it could review the motion, the record indicated "that none of the [lead detective's] statements constitute[d] false testimony," as it perceived only "minor discrepancies or imperfect memory of events" from the lead detective's testimony. *Id.* As to the motion for a *Franks* hearing, the court noted that the motion in any event was irrelevant to the instant case "as a search warrant was not involved in this case." *Id.* Schwartz then petitioned the Florida Supreme Court for discretionary review of her case, which the court denied. *Schwartz v. State*, 134 So. 3d 450 (Fla. 2014).

After exhausting her direct appeals, Schwartz filed a motion for postconviction relief in state court pursuant to Florida Rule of Criminal Procedure 3.850, arguing that her attorney provided mistaken advice that her pretrial motions were dispositive motions that could be appealed. She also attached to that motion an affidavit from her trial attorney—Lewis Midler—stating that he had informed Schwartz that it was his belief that the denials of her various pretrial motions would be overturned on appeal and that Schwartz had accepted the plea based on this advice. He then stated that the trial court, the prosecutor, and he were under the

"mistaken impression" that the pretrial motions were dispositive and, therefore, capable of appellate review and that, but for this mistaken impression, Schwartz would have proceeded to a jury trial on all counts.

The state court denied the motion for postconviction relief, holding that Schwartz was not entitled to relief on her claims related to the involuntariness of her plea based on her attorney's mistaken advice. Specifically, the court found that, even though some the issues on direct appeal were not dispositive, the Fourth District Court of Appeal specifically addressed each issue, finding them all to lack merit such that it would not have provided any relief. Schwartz appealed this decision to the Fourth District Court of Appeal, which affirmed without opinion. *Schwartz v. State*, 227 So. 3d 594 (Fla. Dist. Ct. App. 2017).

After exhausting her state remedies, Schwartz filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. Relying on the United States Supreme Court's decision in *Lee v. United States*, 137 S. Ct. 1958 (2017), she argued that "[t]he state court made an objectionably unreasonable application of Federal Law by failing to examine the decision-making process of the plea itself." Schwartz raised the same grounds that she raised in her state motion for postconviction relief: (1) her plea was not voluntary or knowingly made because her attorney provided mistaken advice that the pretrial motions could be appealed and would likely result in dismissal of the charges; and (2) she received ineffective assistance of counsel based

5

on her attorney's mistaken advice that (a) she could appeal the denial of the pretrial motions, (b) the false testimony at the pretrial hearings could result in dismissal of the charges, and (c) she would prevail on appeal.

The district court referred the petition to the magistrate judge, who recommended that each claim be denied in a report and recommendation. Specifically, the magistrate judge found that *Lee* did not change the existing framework for evaluating ineffective assistance of counsel claims related to allegedly involuntary pleas under *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985). The magistrate judge then found that *Lee* was distinguishable from, and therefore inapplicable to, Schwartz's case because *Lee* dealt with mistaken advice relating to the immigration consequences of a conviction—an issue of "paramount importance" to the petitioner—and because the petitioner's subjective importance of avoiding deportation was present in *Lee*, making the decision to proceed to trial rational even in the face of slim chances of acquittal. According to the magistrate judge, neither unusual circumstance was present here—Schwartz was not facing a "particularly severe penalty" like deportation or other collateral consequence, and her stated goal was to avoid conviction altogether, not to avoid such collateral penalty like deportation. The magistrate judge further found that *Lee* was distinguishable because it involved a federal conviction, whereas Schwartz's conviction is a state conviction, thereby

6

adding an extra layer of deference to the *Strickland* analysis. Looking to the prejudice prong of the *Strickland* analysis, as refined by *Hill*, the magistrate judge determined that Schwartz failed to show prejudice because she received the full benefit of her bargain, as her motions were reviewed on their merits by the Fourth District Court of Appeals. As such, the magistrate judge concluded that Schwartz failed to meet her "remarkably heavy burden."

Schwartz filed objections to the report and recommendation, including that the magistrate judge failed to differentiate her claims as both ineffective assistance claims and due process claims, that *Lee* was not distinguishable to her case, and that the magistrate judge improperly relied on the outcome of the appeal, rather than the effect of the mistake advice on her decision-making process, in analyzing the prejudice prong. The district court overruled Schwartz's objections, adopted the report and recommendation, and denied the habeas petition.

Schwartz appealed the denial of her petition. This Court issued a certificate of appealability on the following issue: "Whether the state court and the district court, in evaluating whether Ms. Schwartz entered a plea due to counsel's mistaken advice, improperly focused on the result of her appeal, rather than on her decision-making process. *See Lee v. United States*, 137 S. Ct. 1958 (2017)."

## II.    STANDARD OF REVIEW

7

We review a district court's denial of a § 2254 petition *de novo*. *Bester v. Warden*, 836 F.3d 1331, 1336 (11th Cir. 2016). But our review is highly deferential to the state court's habeas determination. *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010); *Renico v. Lett*, 559 U.S. 766, 773 (2010). Our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that, after a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court's decision was "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court", or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court applies a rule that contradicts governing law set forth in the Supreme Court's decisions or if it confronts a set of facts that is materially indistinguishable from a Supreme Court decision but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005). The "unreasonable application" inquiry requires that the state court decision be more than incorrect or erroneous— it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Thus, a petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing

8

law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014).

## III.    ANALYSIS

Schwartz raises one argument on appeal—that the district court erred when it unreasonably applied Supreme Court precedent by improperly focusing on the ultimate outcome of her direct appeal, rather than the effect that her attorney's mistaken advice had on her decision-making process underlying the plea. The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963). As the Supreme Court has explained, "the right to counsel is the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). This right attaches not only during a criminal trial but also when a criminal defendant is deciding whether to plead guilty. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Hill*, 474 U.S. at 58.

To succeed on a claim of ineffective assistance of counsel, a defendant must establish both that (1) her attorney's "performance was deficient" and (2) her attorney's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Here, because the district court denied Schwartz's petition without considering the first prong—her attorney's performance under *Strickland*—this Court must likewise limit its analysis to considering only *Strickland*'s prejudice requirement.

9

*See McKathan v. United States*, 969 F.3d 1213, 1222 (11th Cir. 2020); *see also Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). Under the second prong, Schwartz must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McKathan*, 969 F.3d at 1222–23 (quoting *Strickland*, 466 U.S. at 694). A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In the context of pleas, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. As such, when a defendant alleges that her counsel's "deficient performance led [her] to accept a guilty [or nolo contendere] plea rather than go to trial, we do not ask whether, had [she] gone to trial, the result of that trial 'would have been different' than the result of the plea bargain"; rather, we consider "whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'" *Lee*, 137 S. Ct. at 1965 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). We therefore inquire into whether there is a "reasonable probability that but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill*, 474 U.S., at 59).

Supreme Court precedent, in the context of pleas, has distinguished between claims related to the prospects on the underlying charges and claims related to resulting consequences from the plea. *See id.* Where the ineffective assistance claim relates to a defendant's prospects of success on the underlying charges against her and those are affected by the attorney's error, the inquiry includes whether she would have been better off going to trial—i.e., requiring predictions regarding the ultimate outcome. *See Lee*, 137 S. Ct. at 1965; *Premo v. Moore*, 562 U.S. 115, 126–27, 132 (2011); *Hill*, 474 U.S. at 59. Where the claim relates to the consequences of the plea—as was the case in *Lee*—the claim may not turn solely on the likelihood of the outcome resulting from a trial. 137 S. Ct. at 1966. Under either claim, the prejudice inquiry requires a case-specific review of the record. *See, e.g.*, *id.* at 1966–69.

Here, we "look through" the Fourth District Court of Appeal's summary affirmance of the state postconviction court's order, which was the last reasoned adjudication on the merits of Schwartz's claim. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits should "look through" that decision to "the last related state-court decision" that provides a relevant rationale and "then presume that the unexplained decision adopted the same reasoning"). We find that the state postconviction court's consideration of the outcome of Schwartz's direct appeal was not an unreasonable application of federal law. Schwartz claims that her attorney

11

provided mistaken advice relating to her ability to appeal various pretrial motions and the success of such an appeal. The allegedly mistaken advice can reasonably be considered to relate to Schwartz's ultimate prospects on the underlying charges, and therefore, consideration of the ultimate outcome was not unreasonable.

Schwartz argues that her ineffective assistance claim is similar to the defendant's in *Lee*, requiring the state and district court to focus *only* on her decision-making process, not the ultimate outcome. We disagree, as the state and district court reasonably distinguished *Lee* from this appeal. In *Lee*, the mistaken advice related to the consequences of the defendant's plea, i.e., that the defendant would not face mandatory deportation if he pled guilty to a drug distribution charge. 137 S. Ct. at 1963. That advice was incorrect, and the defendant pled guilty and was ordered deported. *Id.* The Supreme Court concluded that the defendant had demonstrated *Strickland* prejudice because he showed a reasonable probability that, but for his attorney's erroneous advice, he would have proceeded to trial, even though he did not show that he necessarily would have been better off by going to trial. *Id.* at 1967–68. For the defendant, "avoiding deportation was *the* determinative factor for him." *Id.* at 1967 (emphasis in original). As such, the Supreme Court determined that the decision to go to trial would not have been "irrational" in retrospect, even though his prospects were "grim." *Id.* at 1965, 1968. Although at

12

trial the defendant's chances of deportation were *almost* certain, a guilty plea *guaranteed* deportation. *Id.* at 1968–69.

In this case, Schwartz claims that, but for her attorney's alleged mistaken advice, she would not have accepted a plea and would have instead proceeded to trial. But the determinative factor for her—the ability to appeal her pretrial motions—did not relate to a consequence of her plea. Instead, her claim relates to the ultimate prospects on the charges against her, which permits a court to consider objective predictions regarding the ultimate outcome had she gone to trial. *See Hill*, 474 U.S. at 59. Here, because appellate review was Schwartz's main concern, her calculation in deciding to take a plea seemingly included the assumption that she would not prevail at trial—a reasonable assumption given the large amount of condemning evidence that was determined to be admissible—and would then have the ability to appeal any pretrial motions. But, as the state postconviction court determined, she did receive review on the merits of her pre-trial motions after accepting the plea. The ultimate outcome, then, had she gone to trial and appealed her pretrial motion, would have been the same—the denials of her pretrial motions would have been affirmed. In retrospect, it would therefore have been "irrational" for her to proceed to trial given her grim chances of acquittal, the potential for a greater sentence for taking the case to trial, and the certainty that an appeal of her pretrial motions would likewise fail.

The underlying issue in Schwartz's petition is that the Florida appellate court did not rule in her favor even though her attorney expressed that he believed that she would be successful. But the fact that the outcome did not go in her favor does not mean that the court did not "meaningfully review" her motions. The court made determinations as to the merits of each of her pretrial motions, which was the determinative factor for her to take a plea. It was therefore not unreasonable for the state postconviction court and the district court to determine that she was not prejudiced by any alleged mistaken advice from her attorney. Unlike in *Lee*, this appeal does not present "unusual circumstances" to warrant reversal of the denial of her habeas petition.

## IV.    CONCLUSION

Because the consideration of the outcome of Schwartz's direct appeal was not an unreasonable application of federal law by the state postconviction court and the district court, we affirm the district court's denial of Schwartz's habeas petition.

**AFFIRMED.**

14